## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIFFANIE SKIBICKI, individually, and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NURTURE INC., D/B/A HAPPY FAMILY ORGANICS; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No.: 1:21-cv-2553<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tiffanie Skibicki ("Plaintiff"), individually and on behalf of the Class and Subclasses of all others similarly situated, brings this class action against Defendant Nurture Inc., dba Happy Family Organics ("Nurture" or "Defendant"), based on Defendant's misleading, deceptive and unfair business practices with respect to the marketing, advertising, labeling, packaging and sale of its baby food products, which contain levels of toxic heavy metals.

## NATURE OF ACTION

1.      This case involves a straightforward and systematic course of false, misleading, and unlawful conduct: Defendant has misrepresented and falsely advertised that the baby food products it sells are organic, nutritious, high quality, and safe for consumption by infants and young children.

2.      Parents and other caregivers, including Plaintiff and members of the Class and Subclasses, reasonably believe that the baby food they purchase will be healthy, nutritious, and free from harmful substances and contaminants. However, on February 4, 2021, The United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee") published a report ("Subcommittee Report"),

revealing its findings that numerous baby foods, including those manufactured by Defendant Nurture, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[1]

3.      Given the health risks associated with the consumption of high levels of toxic heavy metals, the presence of these substances is material to consumers.

4.      Defendant Nurture knew that the presence of toxic heavy metals in its baby food products was material to consumers, which is evidenced by its representations that it screens many ingredients for heavy metals before it agrees to purchase or use them.[2] Yet Defendant Nurture chose to omit and conceal that its baby food products contained, or were at risk of containing, levels of heavy toxic metals, and therefore deceptively misled Plaintiff and members of the Classes that purchased these products in reliance on Nurture's representations.

5.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled baby food products during the statute of limitations period, for breach of express and implied warranty, fraud by omission, intentional and negligent misrepresentation, quasi contract, unjust enrichment, and restitution, and for violations of Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, *et seq.*, and Minnesota False Statement in Advertising Act, M.S.A. § 325F.67.

---

[1] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report, Staff of H. Subcomm. On Econ. And Consumer Policy, Comm. On Oversight and Reform, 117th Cong., https://oversight.house.gov /sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (Feb. 4, 2021) ("Subcommittee Report").

[2] *Happy Family Organics, Quality & Safety of Our Products*, https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/

## THE PARTIES

6.      Plaintiff Tiffanie Skibicki is a citizen of the State of Minnesota and is a member of the Nationwide Class and the Minnesota Subclass. Plaintiff Skibicki purchased Nurture's HappyBaby baby food jars in the flavors Carrots and Sweet Potatoes.

7.      Plaintiff and Class members believed they were feeding their children healthy, nutritious foods during the time they purchased and fed their children Defendant Nurture's baby food products. Due to the false and misleading claims and omissions by Defendant Nurture as described herein, Plaintiff and Class members were unaware that the baby food products sold by Defendant Nurture contained any level of toxic heavy metals, and Plaintiff and Class members would not have purchased the products if that information had been fully disclosed.

8.      Defendant Nurture is a citizen of Delaware, where it is incorporated, and New York, where it maintains its principal place of business at 139 Fulton Street, New York, New York, 10038. Defendant Nurture does business throughout the United States, and formulates, manufactures, distributes, markets, advertises, and sells baby food products online and at brick-and-mortar retail stores.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs (defined below) are citizens of states different from Nurture. Further, greater than two-thirds of the Class members reside in states other than the state in which Nurture is a citizen.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) in that Defendant is a corporation that maintains its principal place of business in this jurisdiction.

Further, Defendant (a) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A.    Defendant Falsely Marketed and Advertised its Baby Food Products

11.    Defendant Nurture manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the HappyBaby label. Nurture makes various representations about its Products, including that they are organic, nutritious, high quality, and safe for consumption by infants and young children.

12.    Nurture claims on its website that it is committed to providing high-quality, healthy food access to every baby and child.[3] Nurture ensures "with the utmost confidence that all Happy Family Organics products are safe for babies and toddlers to enjoy" and only sells products that have been rigorously tested, and that none of its products have contaminant ranges outside of the limits set by the FDA. Nurture also states that it sources its ingredients from trusted farms to reduce the risk of heavy metals in its products, and screens many ingredients for heavy metals before purchasing or using them.[4]

13.    The products at issue are various types of Nurture's baby food products that contain heavy metals, including but not limited to the Nurture products purchased by Plaintiff ("Products")[5], and may include Nurture's other Products, including but not limited to:

---

[3] *Happy Family Organics, Quality & Safety of Our Products*, https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/
[4] *Id.*
[5] Plaintiffs reserve the right to amend this definition upon completion of discovery.

- Organics HappyBABY Organic Squash Chickpeas & Spinach with Avocado oil + sage Pouch;
- Organics HappyBABY Organic Broccoli & Carrots with Olive Oil + Garlic Pouch;
- Organics HappyBABY Organic Sweet Potatos with Olive Oil + Rosemary Pouch;
- Organics HappyBABY Organic Purple Carrots & Cauliflower with Avocado Oil + Oregano Pouch;
- Organics HappyTOT Organic Oatmeal & Sprouted Quinoa with Bananas & Strawberries;
- Organics HappyTOT Organic Oatmeal & Sprouted Quinoa with Apples & Blueberries;
- Organics HappyBABY Organic Pears, Mangos & Spinach Pouch;
- Organics HappyTOT Fiber & Protein Gluten Free Oat Bar Organic Apples & Spinach;
- Organics HappyBABY Apples & Spinach;
- Organics HappyBABY Organic Greek Yogis Blueberry & Purple Carrot;
- Organics HappyBABY Apples, Oats & Cinnamon;
- Organics HappyBABY Organic Rice Cakes Apple;
- Organics HappyBABY Bananas & Strawberries;
- Organics HappyBABY Organic Rice Cakes Blueberry & Beet;
- Organics HappyBABY Bananas & Sweet Potatoes;
- Organics HappyBABY Bananas, Blueberries & Beets;
- Organics HappyBABY Carrots;
- Organics HappyBABY Pears;
- Organics HappyBABY Green Beans;
- Organics HappyBABY Organic Bananas, Beets & Blueberries Pouch;
- Organics HappyBABY Pears & Kale;
- Organics HappyBABY Carrots & Peas;
- Organics HappyBABY Pears, Mangos & Spinach;
- Organics HappyBABY Pears & Prunes;
- Organics HappyBABY Sweet Potatoes;
- Organics HappyBABY Pears, Pineapple & Avocados;
- Organics HappyBABY Organic Pears, Peas & Broccoli Pouch;
- Organics HappyBABY Apples, Mangos & Beets;
- Organics HappyBABY Oats & Quinoa Baby Cereal;
- Organics HappyBABY Organic Apples, Spinach & Kale Pouch;
- Organics HappyTOT Organic Mac & Cheese with Lentil Pasta & Veggie Sauce;
- Organics HappyBABY Organic Creamies Strawberry, Raspberry & Carrot;
- Organics HappyTOT Organic Cheesy Lentils & Quinoa with Cauliflower & Parmesan Sauce;
- Organics HappyBABY Organic Creamies Apple, Spinach, Pea & Kiwi;
- Organics HappyTOT Super Foods Organic Pears, Green Beans, & Peas Pouch;
- Organics HappyTOT Fiber & Protein Organic Pears, Raspberries, Carrots & Butternut Squash Pouch;

- Organics HappyTOT Organic Turkey Bolognese with Lentil Pasta & Vegetable Sauce;
- Organics HappyTOT Super Foods Organics Apples, Sweet Potatoes, Carrots, & Cinnamon Pouch;
- Organics HappyTOT Fiber & Protein Organic Pears, Blueberries & Spinach Pouch;
- Organics HappyTOT Super Foods Gluten Free Oat Bar Organic Blueberries & Oatmeal;
- Organics HappyTOT Super Foods Organic Pears, Mangos & Spinach Pouch;
- Organics HappyTOT Super Foods Organic Apples & Butternut Squash Pouch;
- Organics HappyTOT Super Foods Gluten Free Oat Bar Organic Bananas, Strawberries & Sunflower Butter;
- Organics HappyTOT Super Foods Organic Bananas, Peaches & Mangos Pouch;
- Organics HappyTOT Fiber & Protein Gluten Free Oat Bar Organic Bananas & Carrots Pouch;
- Organics HappyKID Organic Mango & Sweet Potato;
- Organics HappyTOT Fiber & Protein Organic Pears, Kiwi & Kale;
- Organics HappyKID Organic Raspberry & Butternut Squash;
- Organics HappyTOT Fiber & Protein Organic Pears, Peaches, Pumpkin & Apples Pouch;
- Organics HappyTOT Super Foods Organic Apples, Mangos & Kale Pouch;
- Organics HappyBABY Organic Teether Crackers Mango & Pumpkin;
- Organics HappyTOT Super Foods Organic Pears; Beets & Blueberries Pouch;
- Organics HappyKID Organic Apple & Cinnamon;
- Organics HappyBABY Organic Teether Crackers Strawberry & Beet;
- Organics HappyTOT Super Foods Organic Apples, Spinach, Peas & Broccoli Pouch;
- Organics HappyKID Organic Blueberry & Raspberry;
- Organics HappyBABY Organic Stage 1 Infant Formula;
- Organics HappyTOT Super Foods Organic Pears, Bananas, Sweet Potato & Pumpkin Pouch;
- Organics HappyTOT Organic Veggies & Wild Rice with Mushrooms & Parmesan;
- Organics HappyKID Organic Banana & Chocolate;
- Organics HappyTOT Organic Beef & Quinoa Fiesta with Vegetable Salsa;
- Organics HappyBABY Squash, Pears & Apricots Pouch;
- Organics HappyBABY Organic Teethers Pea & Spinach;
- Organics HappyTOT Super Morning Organic Bananas, Blueberries, Yogurt & Oats Pouch;
- Organics HappyBABY Oatmeal Baby Cereal;
- Organics HappyBABY Peas, Bananas & Kiwi Pouch;
- Organics HappyTOT Super Morning Organic Apples, Cinnamon, Yogurt & Oats Pouch;
- Organics HappyBABY Organic Teethers Blueberry & Purple Carrot;

- Organics HappyTOT Super Bellies Immune + Digestive Organic Bananas, Spinach & Blueberries Pouch;
- Organics HappyTOT Super Bellies Immune + Digestive Organic Pears, Beets & Blackberries;
- Organics HappyBABY Organic Teethers Sweet Potato & Banana;
- Organics HappyBABY Mangos Pouch;
- Organics HappyTOT Super Bellies Immune + Digestive Organic Bananas, Carrots & Strawberries Pouch;
- Organics HappyKID Organic Apple, Kale & Mango Pouch;
- Organics HappyBABY Apples, Kale & Oats Pouch;
- Organics HappyBABY Prunes Pouch;
- Organics HappyTOT ABC Multi-Grains Organic Cinnamon & Sweet Potato + Flaxseed;
- Organics HappyKID Organic Apple, Beet, Strawberry & Kiwi Pouch;
- Organics HappyBABY Apples & Carrots Pouch;
- Organics HappyBABY Green Beans, Spinach & Pears Pouch;
- Organics HappyTOT ABC Multi-Grain Cookies Organic Vanilla & Oat + Flaxseed;
- Organics HappyKID Organic Apple, Blueberry & Pomegranate Pouch;
- Organics HappyBABY Pears, Squash & Oats Pouch;
- Organics HappyTOT Super Smart Organic Bananas, Mangos & Spinach + Coconut Milk Pouch;
- Organics HappyBABY Sweet Potatoes, Mangos & Carrots Pouch;
- Organics HappyTOT Super Morning Dairy Free Organic Bananas, Dragon Fruit, Coconut Milk & Oats Pouch;
- Organics HappyKID Organic Apple, Kale & Blueberry Pouch;
- Organics HappyTOT Super Smart Organic Bananas, Beets & Strawberries Pouch;
- Organics HappyTOT Super Morning Dairy Free Organic Apples, Acai, Coconut Milk & Oats Pouch;
- Organics HappyBABY Carrots, Strawberries & Chickpeas Pouch;
- Organics HappyBABY Nutty Blends Organic Apples with 1tsp Walnut Butter Pouch;
- Organics HappyBABY Purple Carrots, Bananas, Avocados & Quinoa Pouch;
- Organics HappyBABY Nutty Blends Organic Bananas with 1tsp Almond Butter Pouch;
- Organics HappyBABY Organic Harvest Vegetables & Chicken with Quinao Pouch;
- Organics HappyBABY Superfood Puffs Apple & Broccoli;
- Organics HappyBABY Nutty Blends Organic Bananas with 1tsp Peanut Butter Pouch;
- Organics HappyBABY Bananas, Plums & Granola Pouch;
- Organics HappyBABY Organic Root Vegetables & Turkey with Quinoa Pouch;
- Organics HappyBABY Superfood Puffs Banana & Pumpkin;

- Organics HappyBABY Nutty Blends Organic Pears with 1tsp Cashew Butter Pouch;
- Organics HappyBABY Apples, Sweet Potatoes & Granola Pouch;
- Organics HappyBABY Organic Vegetable & Beef Medley with Quinoa Pouch;
- Organics HappyBABY Superfood Puffs Kale & Spinach;
- Organics HappyBABY Zucchini, Apples, Peas, Quinoa & Basil Pouch;
- Organics HappyBABY Superfood Puffs Sweet Potato & Carrot;
- Organics HappyBABY Organic Stage 2 Infant Formula;
- Organics HappyBABY Apples, Kale & Avocadoes Pouch;
- Organics HappyBABY Organic Stage 1 Baby Formula Sensitive;
- Organics HappyBABY Superfood Puffs Strawberry & Beet;
- Organics HappyBABY Apples, Guavas & Beets Pouch;
- Organics HappyTOT Love My Veggies Organic Carrots, Bananas, Mangos & Sweet Potatoes Pouch;
- Organics HappyBABY Superfood Puffs Purple Carrot & Blueberry;
- Organics HappyBABY Apples, Pumpkin & Carrots Pouch;
- Organics HappyTOT Love My Veggies Organic Bananas, Beets, Squash & Blueberries Pouch;
- Organics HappyBABY Pears, Squash & Blackberries Pouch;
- Organics HappyTOT Love My Veggies Organic Spinach, Apples, Sweet Potatoes & Kiwi Pouch;
- Organics Apples, Blueberries & Oats Pouch;
- Organics HappyTOT Love My Veggies Organic Zucchini, Pears, Chickpeas & Kale Pouch;
- Organics HappyBABY Pears, Kale & Spinach Pouch;
- Organics HappyBABY Bananas, Sweet Potatoes & Papayas Pouch;
- Organics HappyTOT Organic Cheese & Spinach Ravioli with Marina Sauce;
- Organics HAPPYBABY Bananas, Raspberries & Oats Pouch;
- Organics HappyTOT Organic Squash Ravioli with Squash, Pumpkin & Sage Sauce;
- Organics HappyBABY Pears, Zucchini & Peas Pouch;
- Organics Pears, Pumpkin & Passion Fruit Pouch;
- Organics HappyBABY Organic Yogis Strawberry;
- Organics HappyBABY Black Beans, Beets & Bananas Pouch;
- Organics HappyBABY Organic Yogis Mixed Berry Pouch;
- Organics HappyBABY Pears, Pumpkin, Peaches & Granola Pouch;
- Organics HappyBABY Organic Yogis Banana & Mango Pouch;
- Organics HappyBABY Bananas, Pineapple, Avocado & Granola Pouch;
- Organics HappyBABY Organic Greek Yogis Strawberry Banana;
- Organics HappyBABY Apples & Blueberries.

14.     Nurture uses words such as "organic" and ages such as "baby", "tot", and "kid" to emphasize the foods suitability for consumption by infants and young children.

15.     Nurture's labels and packaging do not disclose that the Products contain, or may contain, levels of toxic heavy metals.

**B.     Defendant's Marketing and Advertising Misled and Deceived Consumers**

16.     Parent consumers are drawn to representations such as the ones claimed on Nurture's website because parents pay attention to what ingredients are in the baby food they purchase for their child. Parents are cautious and vigilant because they do not want to expose their children to potentially harmful substances or chemicals, such as heavy metals like arsenic, lead, mercury, and cadmium.

17.     Nurture's marketing of its Products wrongfully conveys to consumers that the Products have certain superior quality and characteristics that they do not actually possess. For example, Nurture's misrepresentations caused Plaintiff and Class members and other consumers to believe that its Products do not contain high levels of toxic heavy metals through its marketing and omissions, which is material information to a reasonable consumer.

18.     In light of Nurture's marketing, including its commitment to providing organic, high quality products, Nurture knew or should have known that the Products contained toxic heavy metals or potentially dangerous contaminants that pose health risks to humans, and particularly to infants and young children. Nurture knew consumers purchased the Products based on the reasonable expectation that Nurture manufactured the Products in a way that was proscribed by its marketing and advertising.

19.     Nurture intended that Plaintiff and Class members and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Nurture, as well as its advertising, marketing, and labeling of the Products as organic, nutritious, high quality, and safe for consumption by infants and young children.

20.     Based on Nurture's decision to advertise, label, and market its Products as organic, nutritious, high quality, and safe for consumption by infants and young children, Nurture had a duty to ensure that these statements were true and not misleading. As such, Nurture knew or should have known that the Products included nondisclosed levels of toxic heavy metals.

21.     However, Nurture's marketing is deceptive, misleading, unfair and false to Plaintiff and other consumers of its Products. Nurture failed to disclose that the products contain or may contain any level of heavy metals or other undesirable toxins or contaminants. Nurture intentionally omitted this in order to induce and mislead reasonable consumers like Plaintiff and members of the Classes to purchase the Products.

22.     As a result of Nurture's omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals in the Products without conducting his or her own tests or relying on tests conducted by a third party.

23.     Nurture therefore acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing and omissions as described herein.

**C.     Heavy Metals**

24.     Heavy metals such as arsenic, lead, mercury, and cadmium are known as "developmental neurotoxins" that can harm a baby's developing brain and nervous system. Exposure to these neurotoxins can result in a loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ("ADHD").[6] Though heavy metals are naturally found in the environment, most heavy metals in foods come from contaminated soil or

---

[6] *See generally* Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf ("Healthy Babies Bright Futures Report").

water. The contamination comes from either farming or manufacturing practices, such as the use of pesticides, mining, and smelting or pollution.

25.     Additionally, the U.S. Food and Drug Administration ("FDA") has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children, and "lead to illness, impairment, and in high doses, death."[7]

26.     Healthy Babies Bright Futures—an alliance of nonprofit organizations, scientists and donors that design and implement programs to reduce babies' exposure to toxic chemicals— tested a variety of baby foods to determine the levels of heavy metals contained in their products and published the report in or around October 2019 ("Healthy Babies Bright Futures Report").[8]

27.     The Healthy Babies Bright Futures Report revealed that Nurture's Happy Baby Superfood Puffs (Sweet Potato and Carrot) contains 295 parts per billion ("ppb") of arsenic, 91 ppb of which was inorganic arsenic, 3.7 ppb of lead, 12.2 ppb of cadmium, and 1.94 ppb of mercury.[9]

28.     In addition to the Healthy Babies Bright Futures Report, as mentioned above, The Subcommittee published a report revealing findings that numerous baby foods, including those manufactured by Defendant Nurture, are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[10]

29.     As noted by the Subcommittee, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity."[11]

---

[7] Subcommittee Report at 9.
[8] *See generally* Healthy Babies Bright Futures Report.
[9] *Id.* at 19.
[10] *See* Subcommittee Report at 9.
[11] *Id.*

30.    Furthermore, the Subcommittee Report noted that exposing children to toxic heavy metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage. The Subcommittee Report demonstrated the consequences that can result due to exposure to toxic heavy metals, noting that one study showed that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.[12]

a.    **Arsenic**

31.    Arsenic is a heavy metal contaminant that is found in food and drinking water from its long-time use as a pesticide and additive in animal feed. Arsenic has been known to cause bladder, lung, and skin cancer, and can also harm the developing brain and nervous system.[13] At least 13 studies link arsenic to IQ loss for children exposed to it in utero or during the first few years of life.[14]

32.    Another study on the effects of arsenic revealed an average loss of 5-6 IQ points among those who drank well water contaminated with arsenic at or above 5 ppb.[15] Studies find lasting impacts when young children are exposed to arsenic early in life.[16] There is also no evidence that the effects of arsenic exposure are reversible.[17]

33.    The harmful effects of exposure to arsenic have caused the FDA to set standards limiting the allowable amount of inorganic arsenic in various products, such as 10 ppb for bottled

---

[12] *Id.*
[13] Healthy Babies Bright Futures Report at 13.
[14] *Id.*
[15] *Id.*
[16] *Id.* ("Studies find lasting impacts when children are exposed to arsenic early in life, including persistent IQ deficits in children two years after their polluted drinking water was replaced, cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."
[17] *Id.*

water.[18] However, the Subcommittee Report shows that Nurture sod baby foods after tests showed they contained as much as 180 ppb of inorganic arsenic, and over 25% of the products nurture tested before sale contained over 100 ppb of inorganic arsenic. Nurture's testing also shows that the typical baby food product it sold contained 60 ppb of inorganic arsenic Furthermore, Nature sold all products tested, regardless of how much toxic heavy metal the baby food contained, and set its own internal testing standard for arsenic at 115 ppb, which is 15% higher than the FDA limit.[19]

  **b.** **Cadmium**

34. Cadmium is a heavy metal that has been linked to neurotoxicity, cancer, kidney damage, bone damage, and heart damage.[20]

35. Cadmium is a number seven on the Agency For Toxic Substances and Disease Registry's ("ATSDR") list of substances that is present in the environment that pose the most significant potential threat to human health, and is associated with decreases in IQ and the development of ADHD.[21]

36. The FDA has set the maximum allowable level of cadmium in bottled water at 5 ppb.[22] However, according to the Subcommittee's findings, the test results of baby foods and their ingredients "eclipse those levels."[23] In fact, sixty five percent of Nurture's finished baby food products contained more than 5 ppb of cadmium.[24]

---

[18] 21 C.F.R. § 165.110; Subcommittee report at 3–4.
[19] Subcommittee report at 3.
[20] *Id.*
[21] *Id.* at 12.
[22] *Id.* at 4.
[23] *Id.*
[24] *Id.* at 4.

     **c.**     <u>**Lead**</u>

37.     Lead is a heavy metal that widely contaminates food from its long-time use as a pesticide, its use in food processing equipment, and its presence at elevated levels in soil.[25] Lead is a number two on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health, and is associated with behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.[26]

38.     According to the FDA, lead is especially dangerous to infants and young children.[27] Lead exposure has been shown to severely affect academic achievement in children, and the effects of early childhood exposure appear to be permanent.[28]

39.     The FDA has set the maximum allowable levels in bottle water at 5 ppb of lead.[29] However, the Subcommittee's findings reveal that Nurture sold finished baby food products that tested as high as 641 ppb of lead. Almost 20% of the finished baby food products that Nurture tested contained over 10 ppb of lead.[30]

     **d.**     <u>**Mercury**</u>

40.     Mercury is a pollutant released from coal-fired power plants, mining operations and other sources.[31] Mercury is number three on ATSDR's list of substances present in the environment that pose the most significant potential threat to human health.[32]

---

[25] Healthy Babies Bright Futures Report at 13.
[26] Subcommittee Report at 11.
[27] *Id.*
[28] *Id.*
[29] *Id.* at 4.
[30] *Id.* at 3.
[31] Healthy Babies Bright Futures Report at 14.
[32] Subcommittee Report at 12.

41.    Pre-natal mercury exposure has been "consistently associated with adverse subsequent neuro-development," and post-natal mercury exposure has been associated with autistic behaviors among preschool-age children.[33]

42.    The FDA has capped the allowable level of mercury in drinking water at 2 ppb.[34] According to the Subcommittee Report, Nurture sold finished baby food products containing as much as 10 ppb of mercury.[35]

**D.    Plaintiff and Class members' Reliance was Reasonable**

43.    Plaintiff and Class members reasonably relied on Defendant's claims, warranties, representations, advertisements, and other marketing sources concerning the quality of the Products.

44.    Plaintiff and Class members read and relied upon the labels and packaging of the Products when making purchasing decisions. Had Plaintiff and Class members known Nurture's Products actually contained high levels of heavy metals, Plaintiff and Class members would not have purchased the Products.

45.    A reasonable consumer would consider the labeling of a product when deciding whether or not to purchase it. Here, Plaintiff and Class members relied on the statements and omissions on the Products' labeling that led them to believe the Products were organic, nutritious, high quality, and safe for consumption by infants and young children.

---

[33] *Id.* at 12–13.
[34] *Id.* at 4.
[35] *Id.* at 3.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action individually and on behalf of all other similarly situated Class members pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Classes:

### Nationwide Class

All persons within the United States who purchased Nurture's HappyBaby Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

### Minnesota Subclass

All persons within the State of Minnesota who purchased Nurture's HappyBaby Baby Food Products for household or business use during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

47.    Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

48.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add subclasses before the Court determines whether certification is appropriate.

49.    **Numerosity**: The proposed Class and Subclass are so numerous that joinder of all members would be impractical. The Products are sold throughout the United States, directly and by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members

and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

50.    **Common Questions Predominate**: There are questions of law and fact common to the proposed Class and Subclasses that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a.    Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b.    Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c.    Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d.    Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

e.    Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

f.    Whether Defendant represents to consumers that the Products have characteristics, benefits, or qualities that they do not have;

g.    Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount;

h.    Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

i.    Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

51.    Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and members of the Classes has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same representations regarding the health and quality of the Products, in that they are organic, nutritious, high quality, and safe for consumption by infants and young children, and (b) the Products actually contain levels of toxic heavy metals. Therefore, individual questions, if any, pale in comparison to the numerous common questions predominating in this action.

52.    **Typicality**: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

53.    **Adequacy**: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with, and are in no way antagonistic to, the interests of the putative Class members they seek to represent.  Plaintiff has also retained counsel competent and experienced in class action litigation and they intend to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

18

54.   **Superiority**: The nature of this action and the nature of the laws available to Plaintiff and the Classes make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Classes for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is miniscule compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members would not likely recover, or would not likely have the chance to recover, damages and/or restitution from Defendant, which would continue to retain the proceeds of its wrongful conduct. Additionally, injunctive relief for the benefit of Class members and the public would not be possible absent class treatment and Defendant's wrongful conduct would persist unabated. Further, individualized litigation would increase the delay and expense to all parties and would multiply the burden on the judicial system presented by the complex legal and factual issues of this case. Finally, Defendant has acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes**.** Individualized litigation presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Express Warranty**
***(on behalf of the Classes)***

55.   Plaintiff repeats and realleges the allegations contained in paragraphs 1-54, as though fully set forth herein.

56.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Nurture for breach of express warranty.

57.    Nurture marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiff and members of the Classes.

58.    Nurture expressly warranted, advertised, and represented to Plaintiff and members of the Classes that the Products were and are organic, nutritious, high quality, and safe for consumption by infants and young children.

59.    Nurture made these express warranties regarding the Products' quality, ingredients, and suitability for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and members of the Classes entered into upon purchasing the Products.

60.    Nurture's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiff and members of the Classes. Plaintiff and members of the Classes relied on Nurture's advertisements, warranties, and representations regarding the Products in deciding whether or not to purchase Nurture's Products.

61.    Nurture's Products do not conform to Nurture's advertisements, warranties and representations in that they are not safe or appropriate for consumption by infants and young children, and contain, or may contain, levels of various heavy toxic metals.

62.    Nurture was on notice of this breach, as Nurture was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

63.     Privity exists because Nurture expressly warranted to Plaintiff and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, nutritious, high quality, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

64.     As a direct and proximate result of Nurture's conduct, Plaintiff and members of the Classes have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of heavy metals and/or other contaminants that do not conform to the Products' marketing and advertisements.

65.     Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Nurture's failure to deliver goods conforming to their express warranties and resulting breach.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
***(on behalf of the Classes)***

66.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-54, as though fully set forth herein.

67.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Nurture for breach of implied warranty of merchantability.

68.     Nurture is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiff and members of the Classes.

69.     At all times mentioned herein, Nurture manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiff and members of the Classes,

Nurture impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' containers and labels, including that the food was organic, nutritious, high quality, and safe for consumption by infants and young children. Plaintiff and members of the Classes relied on Nurture's promises and affirmations of fact when they purchased the Products.

70.    Contrary to these representations and warranties, the Products were not fit for their ordinary use, consumption by infants or young children, and did not conform to Nurture's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

71.    Nurture breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label, as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

72.    Nurture was on notice of this breach, as Nurture was aware of the included heavy metals in the Products due to its own testing, and based on the investigation in the Healthy Babies Bright Futures report that revealed the Products as containing various levels of toxic heavy metals.

73.    Privity exists because Nurture impliedly warranted to Plaintiff and members of the Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were organic, nutritious, high quality, and safe for consumption by infants and young children, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

74.     As a direct and proximate result of Nurture's conduct, Plaintiff and members of the Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of heavy metals and/or unnatural or other ingredients.

75.     Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**THIRD CAUSE OF ACTION**
**Fraud by Omission**
*(on behalf of the Classes)*

76.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-54, as though fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Nurture for fraud by omission.

78.     Nurture concealed from and failed to disclose to Plaintiff and members of the Classes that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

79.     Nurture was under a duty to disclose to Plaintiff and members of the Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Nurture was in a superior position to know the true state of facts about its products; (2) Nurture was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by infants and young children; and (3) Nurture knew that Plaintiff and members of the Classes could not reasonably have been expected to learn or discover that the Products

were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

80.    The facts concealed or not disclosed by Nurture to Plaintiff and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

81.    Plaintiff and members of the Classes justifiably relied on Nurture's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Nurture.

82.    As a direct and proximate result of Nurture's conduct, Plaintiff and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

83.    Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation
*(on behalf of the Classes)*

84.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-54, as though fully set forth herein.

85.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Nurture for negligent misrepresentation.

86.     Nurture marketed the Products in a manner indicating that the Products were and are organic, nutritious, high quality, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Nurture has made misrepresentations about the Products.

87.     Nurture's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

88.     At all relevant times when such misrepresentations were made, Nurture knew or had been negligent in not knowing that the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants. Nurture has no reasonable grounds for believing its misrepresentations were not false and misleading.

89.     Nurture intended that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Nurture, as well as its advertising, marketing, and labeling of the Products as organic, nutritious, high quality, and safe for consumption by infants and young children.

90.     Plaintiff and members of the Classes have reasonably and justifiably relied on Nurture's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products at all.

91.     Therefore, as a direct and proximate result of Nurture's negligent misrepresentations, Plaintiff and members of the Classes have suffered actual damages in that

they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

92.    Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CAUSE OF ACTION
### Intentional Misrepresentation
### *(on behalf of the Classes)*

93.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-54, as though fully set forth herein.

94.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Nurture for intentional misrepresentation.

95.    Nurture marketed the Products in a manner indicating that the Products were and are organic, nutritious, high quality, and safe for consumption by infants and young children. However, the Products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging. Therefore, Nurture has made misrepresentations about the Products.

96.    Nurture's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the safety of the product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the Product.

97.    At all relevant times when such misrepresentations were made, Nurture knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

98.    Nurture intended that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Nurture, as well as its advertising, marketing, and labeling of the Products as organic, nutritious, high quality, and safe for consumption by infants and young children.

99.    Plaintiff and members of the Classes have reasonably and justifiably relied on Nurture's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at all.

100.    Therefore, as a direct and proximate result of Nurture's intentional misrepresentations, Plaintiff and members of the Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

101.    Plaintiff and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### SIXTH CAUSE OF ACTION
**Quasi Contract/Unjust Enrichment/Restitution**
***(on behalf of the Classes)***

102.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-54, as though fully set forth herein.

103.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Nurture for quasi contract, unjust enrichment, and restitution.

104.    As alleged herein, Nurture has intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Nurture. Plaintiff and members of the Classes therefore have been induced by Nurture's misleading and deceptive representations about the Products, and paid more money to Nurture for the Products than they otherwise would and/or should have paid.

105.    Plaintiff and members of the Classes have conferred a benefit upon Defendant as Nurture has retained monies paid to them by Plaintiff and members of the Classes.

106.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Nurture.

107.    Therefore, it is inequitable and unjust for Nurture to retain the profit, benefit, or compensation referred upon it without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

108.    As a direct and proximate result of Nurture's unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Nurture from its deceptive, misleading, and unlawful conduct as alleged herein.

## SEVENTH CAUSE OF ACTION
### Minnesota Prevention of Consumer Fraud Act
### M.S.A. § 325F.68 *et seq.*
### (*On behalf of Plaintiff Tiffanie Skibicki and the Minnesota Subclass*)

109.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-54, as if fully set forth herein.

110.    Plaintiff Skibicki brings this claim individually and on behalf of the members of the proposed Minnesota Subclass against Nurture for violations of Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, *et seq.*

111.    The Minnesota Prevention of Consumer Fraud Act prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." M.S.A. § 325F.69.

112.    The Products at issue are "Merchandise" under M.S.A. § 325F.68, subd. 2.

113.    Nurture and Plaintiff and members of the Minnesota Subclass are "persons" within the meaning of the Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, subd. 3.

114.    For the reasons discussed herein, Nurture violated and continues to violate the Minnesota Prevention of Consumer Fraud Act by engaging in the deceptive, unfair acts or practices proscribed by M.S.A. § 325F.68, *et seq.* As detailed above, in the course of their business, Nurture made materially false and misleading statements to Plaintiff and members of the Minnesota Subclass and supplied Plaintiff and members of the Minnesota Subclass with false information concerning the health and safety of its Products.

115.    Nurture also concealed from Plaintiff and members of the Minnesota Subclass the presence, or risk of, toxic heavy metals in its Products.

116.    Nurture intended that Plaintiff and members of the Minnesota Subclass rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Nurture, as well as its advertising, marketing, and labeling of the Products as natural, organic, free from artificial preservatives, and safe for consumption by infants and young children.

117.    By failing to warn Plaintiff and members of the Minnesota Subclass that the Products contain, or may contain, toxic heavy metals such as arsenic, cadmium, mercury, and lead, Nurture violated the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* Had Nurture disclosed all material information regarding the presence, or risk of, toxic heavy metals in its Products, Plaintiff and members of the Minnesota Subclass would not have purchased the Products.

118.    As a direct and proximate result of Nurture's violation of the Minnesota Prevention of Consumer Fraud Act, M.S.A. § 325F.68, *et seq.*, Plaintiff and members of the Minnesota Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

119.    Plaintiff Skibicki and members of Minnesota Subclass seek relief for the injuries they have suffered as a result of Nurture's unfair and deceptive acts and practices, as provided by Minnesota Prevention of Consumer Fraud Act and applicable law.

## EIGHTH CAUSE OF ACTION
### Minnesota False Statement in Advertising Act
### M.S.A. § 325F.67
### (*On behalf of Plaintiff Tiffanie Skibicki and the Minnesota Subclass*)

120.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-54, as if fully set forth herein.

121.    Plaintiff Skibicki brings this claim individually and on behalf of the members of the proposed Minnesota Subclass against Nurture for violations of Minnesota False Statement in Advertising Act, M.S.A. § 325F.67.

122.    Nurture's actions, representations and omissions constitute unfair and deceptive trade practices within the meaning of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67, including but not limited to:

      a.    Advertising goods and/or services with the intent not to sell them as advertised

      b.    Advertising or otherwise representing that goods or services are guaranteed in such a way as to have the capacity and tendency of misleading purchasers or prospective purchasers or prospective purchasers into believing that the goods or services so guaranteed have a greater degree of serviceability, durability, or performance capability in actual use than is true in fact; and

      c.    Failing to disclose material information concerning goods or services which information was known at the time of an advertisement or sale, and such failure to disclose such information was intended to induce Plaintiff and members of the Class to enter into a transaction.

123.    By engaging in conduct described herein, Nurture violated and continues to violate the false advertising provisions of Minnesota's False Statement in Advertising Act, M.S.A. § 325F.67.

124.    Nurture's untrue, deceptive, and misleading assertions, representations, and advertisements concerning its Products include its statements that its Products are natural,

organic, free from artificial preservatives, and safe for consumption by infants and young children. Nurture markets its Products in a manner that indicates its Products are safe for consumption by infants and young children, as it uses words such as "ages "4+ Months", "6+ Months", "8+ Months" and "12+ Months" to emphasize the foods suitability for consumption by infants and young children.

125.    The unfair and deceptive trade practices and false advertising described herein occurred in the course of Nuture's business and significantly impacted the public as actual and potential consumers of Nurture's businesses.

126.    As a direct and proximate result of Nurture's violation of the Minnesota False Statement in Advertising Act, M.S.A. § 325F.67., Plaintiff and members of the Minnesota Subclass have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

127.    Plaintiff Skibicki and members of Minnesota Subclass seek relief for the injuries they have suffered as a result of Nurture's unfair and deceptive acts and practices, as provided by Minnesota False Statement in Advertising Act and applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the Class and Subclasses defined above, appointment of Plaintiff as Class representatives, and appointment of their counsel as Class counsel;

B.    A declaration that Defendant's actions, as described herein, constitute violations of the claims described herein;

C.    An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.    An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.    An order directing Defendant to engage in a corrective advertising campaign;

F.    An award to Plaintiff and their counsel of their reasonable expenses and attorneys' fees;

H.    An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.    For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims presented herein so triable.

Dated: March 24, 2021                    **CARLSON LYNCH LLP**

By: *_/s/ Gary F. Lynch_*
Gary F. Lynch
1133 Penn Avenue, Floor 5
Pittsburgh, PA 15222
Tel.    412-322-9243
Fax:    412-231-0246
glynch@carlsonlynch.com

**CARLSON LYNCH LLP**
Todd D. Carpenter
Scott G. Braden
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:    619-762-1900
Fax:     619-756-6991
tcarpenter@carlsonlynch.com
sbraden@carlsonlynch.com

LEEDS BROWN LAW, P.C.
Jeffrey K. Brown
Michael A. Tompkins
Brett R. Cohen
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel:     516-873-9550
jbrownl@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*Attorneys for Plaintiff*